UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

JESSIE TOUSSAINT,                                          :          21-CV-1100 (ARR) (JRC)
                                                           :
                    *Plaintiff*,                           :
                                                           :          **OPINION & ORDER**
       -against-                                           :
                                                           :
INTERFAITH MEDICAL CENTER, LOCAL 1199 SEIU                 :
UHWE, GEORGE GRESHAM AS PRESIDENT LOCAL                    :
1199 SEIU, PATRICIA SEELEY-AUSTIN A/K/A                    :
PATRICIA EDMUND, MARGARET PICKERSGILL,                     X
PRISSINA ALSTON, and HALLAM SMALL,

                    *Defendants*.

----------------------------------------------------------------------

ROSS, United States District Judge:

       In March 2021, plaintiff, Jessie Toussaint, commenced the present action against

defendants Interfaith Medical Center ("Interfaith"), Margaret Pickersgill, Prissina Alston, Hallam

Small, Local 1199 SEIU United Healthcare Workers East ("the Union" or "Local 1199"), George

Gresham, and Patricia Seeley-Austin, also known as Patricia Edmund ("Patricia Edmund").

Plaintiff, a former employee of Interfaith and former member of Local 1199, asserts federal claims

under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 158, the National Labor

Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, and the Employment Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as well as state law claims for intentional

infliction of emotional distress, defamation, civil conspiracy, malicious prosecution, and prima

facie tort. At the crux of plaintiff's complaint is her belief that she was wrongfully terminated by

Interfaith to prevent her from attaining her health welfare and pension benefits and that the Union

failed to fairly represent her in its subsequent grievance process.

Defendants have moved to dismiss the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, I grant defendants' motion.

## BACKGROUND[1]

Plaintiff worked as a Patient Care Technician at Interfaith from June 2009 to September 2020. Third Am. Compl. ¶ 12, ECF No. 47. During her employment, she was a member of the bargaining unit of Local 1199, and from June 2014 onward she participated in a pension plan operated by the Union. *Id.* According to plaintiff, at the time of her dismissal in 2020, she was "fully vested in her health welfare and pension benefits," *id.*, and less than ten years from being eligible "for her full pension payouts," *id.* ¶ 97.

On August 9, 2020, plaintiff was at work when a patient with "a history of behavioral and mental health issues physically attacked two security guards." *Id.* ¶ 21. During the altercation, the patient "was struck on the eye." *Id.* According to plaintiff, she was not in the patient's room when the incident took place, nor did she "witness [it] first hand." *Id.* ¶ 24. At some point around this time, though, plaintiff told the nurse's station to call a "code orange," which notified Small, the supervisor in charge of Patient Care Assistants, Behavior Health Associates, and Patient Care Technicians, that an incident had occurred. *Id.* ¶ 21.[2]

The following day, when plaintiff returned to work, she was called into a meeting with Small, Pickersgill, who was the head of the Behavioral Health Department, and Alston, a doctor at Interfaith. *Id.* ¶¶ 16, 18, 47. Edmund, a labor organizer for Local 1199, *see id.* ¶ 15, may have

---

[1] For the purposes of deciding this motion, I accept as true the following facts, which are drawn from plaintiff's Third Amended Complaint. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

[2] It is unclear from the complaint whether plaintiff notified the nurse's station prior to this incident or whether she notified the nurses in response to the incident. *Compare id.* ¶¶ 21, 90 *with id.* ¶¶ 17, 48.

been present as well. *Compare id.* ¶ 15 (alleging that Edmund was at the meeting) *with id.* ¶ 18 (omitting Edmund from the list of attendees at the meeting). At the meeting, the defendants who were there "attempted to coerce Plaintiff to falsely admit that she witnessed" the incident the previous day. *Id.* ¶ 47. Alston specifically told plaintiff, "You saw what happened and you failed to report the patient abuse." *Id.* Plaintiff claims that Alston "knew or should have known" that her statements were false. *Id.* ¶ 18. On documents dated August 12, 2020, Pickersgill and Small accused plaintiff of "Patient Abuse" and "fail[ure] to report patient abuse" for being "in the patient's area where the incident took place." *Id.* ¶ 48.

On or about September 1, 2020, Interfaith fired plaintiff for "patient abuse" and "failure to report patient abuse." *Id.* ¶ 13. Around the same time, Interfaith submitted a report to the New York State Justice Center for the Protection of People with Special Needs ("NYSJC"). *Id.* ¶ 73. The complaint offers inconsistent accounts of what the report alleged, but Interfaith appears to have accused plaintiff of either patient abuse and failure to report patient abuse, *id.* ¶¶ 13, 19, or engaging in "Obstruction against/to a Service Recipient," *id.* ¶¶ 52–53, 73. Also in September 2020, Local 1199 removed plaintiff's recommendations from its hiring hall, a database that "made employee resumes and recommendations available to prospective employers who sought to hire union members." *Id.* ¶¶ 75, 85.[3]

---

[3] Plaintiff states this fact in the context of her hybrid § 301/duty of fair representation cause of action, alleging that the Union breached its duty of fair representation when it removed the recommendations in September 2020. *See id.* ¶ 75. While putting forth her causes of action for the Union's ERISA violation and defamation by the Interfaith defendants, however, she claims "[b]ased on information and belief" that her information was removed from the hiring hall database in March 2021. *See id.* ¶¶ 85, 128. As discussed below, the Union's hiring hall-related activity, whenever it occurred, cannot support plaintiff's cause of action under ERISA, and I decline to exercise jurisdiction over plaintiff's state law claims. Thus, the removal of plaintiff's recommendations from the hiring hall is relevant only for her hybrid claim. As that claim states that the Union "deleted [p]laintiff's recommendations to prevent [p]laintiff from utilizing the [U]nion's hiring electronic hiring hall system . . . since on or about September 2020," I accept

Following plaintiff's termination, Local 1199 filed a grievance with Interfaith on her behalf. *Id.* ¶¶ 29, 34. In an email sent on September 23, 2020, Edmund informed plaintiff that her "termination grievance meeting with [Interfaith] was to be held on September 28, 2020." *Id.* ¶ 34. "By letter dated[] October 14, 2020, [Interfaith] denied the grievance and upheld [p]laintiff's termination." *Id.*

On October 15, 2020, plaintiff sent a text message to Edmund, seeking to learn the result of the grievance meeting. *Id.* ¶ 35. On November 5, 2020, Edmund responded, stating "in pertinent part, 'The Division [hearing and appeals] paper work [for an appeal of the initial denial] has already been file[d] with the 1199 legal department. They will contact you when your date is available.'" *Id.*[4] Plaintiff did not receive any further communication from the Union, and in December 2020 she emailed Edmund. *Id.* Edmund replied by text on January 13, 2021, telling plaintiff, "I got your email. Your division hearing and appeals has been filed already." *Id.* According to plaintiff, these communications were false, as the Union had not yet appealed the outcome of the grievance meeting. *Id.* ¶¶ 35, 46.

On March 1, 2021, plaintiff initiated the instant lawsuit, bringing claims against Interfaith, Pickersgill, Alston, Small, and Gresham, the president of Local 1199. *See* Compl., ECF No. 1.

The following month, the NYSJC completed its investigation of the September 9, 2020, incident. Third Am. Compl. ¶ 53. In a letter dated April 29, 2021, the NYSJC determined that the allegation against plaintiff of "Obstruction against/to a Service Recipient" was unsubstantiated. *Id.*

---

September 2020 as the date of removal for the purposes of my analysis.

[4] Plaintiff explains that Edmund's "representation was false" because "an appeal to the [U]nion chapter would have preceded an appeal to the division" and did in her case. Third Am. Compl. ¶ 35.

The letter explained that an "'unsubstantiated' finding means there was not enough evidence to confirm that an incident occurred or that the incident occurred but did not rise to the level of abuse and/or neglect." *See* Notice of Provider of Investigation Determination 4, ECF No. 51-1.[5] It also stated that an unsubstantiated finding does not preclude an employer from taking adverse employment action against the employee. *Id.*

In May 2021, Interfaith, Pickersgill, Alston, and Small (collectively, "Interfaith defendants") and Gresham separately filed motions to dismiss plaintiff's complaint. *See* Letter re Mot. to Dismiss Moving Papers by Alston, Interfaith, Pickersgill, and Small, ECF No. 29; Letter re Notice of Mot. by Gresham, ECF No. 27. In Gresham's motion, he argued that because the Union had not yet completed its appeals process, plaintiff's claim that the Union breached its duty of fair representation was not ripe. Mem. of Law in Support of Mot. by Gresham 16–18 (on file with the court). In response, on June 3, 2021, plaintiff voluntarily dismissed her causes of action against Gresham. *See* Letter re Voluntary Dismissal of Union Def., ECF No. 30; Notice of Voluntary Dismissal, ECF No. 32.

That same day, the Union filed an appeal of plaintiff's grievance to the Chapter Hearing and Appeals Board ("Chapter Board"). Third Am. Compl. ¶ 35. The Chapter Board convened to review plaintiff's case on June 9, 2021. *Id.* At the end of that meeting, the Chapter Board denied plaintiff's request to take her case to arbitration. *Id.* ¶¶ 6, 35. In a letter to plaintiff sent two days later, the Chapter Board stated that plaintiff "does not want to return to work" and reiterated its decision not to pursue arbitration. *Id.* ¶ 6. Plaintiff claims that this statement contradicted what she said at the meeting, where she told the Chapter Board that she "wanted to return to work" and

---

[5] "A complaint is deemed to include . . . materials incorporated in it by reference." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Plaintiff refers to the NYSJC letter throughout her complaint.

"always had a good rapport with the patients." *Id.* ¶ 36. On June 30, 2021, plaintiff "was hospitalized due to physical ailments that manifested from her mental anguish and emotional distress" surrounding her termination and the Union's denial of her appeal. *Id.* ¶¶ 37, 54.

Plaintiff appealed the Chapter Board's denial of her arbitration request to the Union's Division Hearing and Appeals Board ("Division Board"). *Id.* ¶ 35. On July 13, 2021, counsel for the Union contacted plaintiff's attorney, telling her that plaintiff's Division Board appeal was scheduled for July 26, 2021, and that Edmund "would contact [p]laintiff with the notice of this . . . appeal." *Id.* ¶ 38. On July 19, 2021, having heard nothing from Edmund, plaintiff's attorney contacted the Union's counsel. *Id.* According to plaintiff, Edmund claimed she was unable to get in touch with plaintiff because "there was an issue with [p]laintiff's email address." *Id.* The next day, plaintiff's counsel requested that someone else from the Union send plaintiff the notice of appeal; "[s]hortly thereafter, the union's legal department promptly sent [p]laintiff a letter notice of the July 26, 2021 appeal meeting." *Id.* ¶ 39. "Plaintiff's final appeal meeting was held on or about July 26, 2021 and denied by letter decision dated on or about August 8, 2021." *Id.* ¶ 35. The Union explained in the letter that "there was no chance of [p]laintiff prevailing on her discharge arbitration." *Id.* ¶ 40.

Following the Division Board's decision, plaintiff filed a motion with this court, requesting leave to "reinstate[] . . . the union defendant Local 1199" and to assert additional causes of action against all defendants. Mot. for Leave to File Second Am. Compl. to Reinstate Local 1199 SEIU, ECF No. 40. I granted plaintiff permission to file an amended complaint. Order, Sept. 29, 2021. On September 29, 2021, plaintiff filed a Third Amended Complaint ("complaint"), which alleged seven causes of action: (1) a hybrid § 301/fair representation claim against the Union; (2) an ERISA claim against all defendants; (3) a claim for intentional infliction of emotional distress

against all defendants; (4) a defamation claim against Interfaith defendants; (5) a claim for civil conspiracy against all defendants; (6) a claim for malicious prosecution against Interfaith defendants and Edmund; and (7) a prima facie tort claim against Pickersgill, Alston, Small, and Edmund.

On October 8, 2021, Interfaith defendants and Local 1199, Gresham, and Edmund (collectively, "Union defendants") separately moved to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss for Failure to State a Claim, ECF No. 48; Mot. to Dismiss the Third Am. Compl., ECF No. 50.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a 12(b)(6) motion, I accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor. *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). I am not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## DISCUSSION

## I. Plaintiff Has Not Adequately Alleged a Hybrid § 301/ Fair Representation Claim.

Plaintiff's first cause of action is a hybrid § 301/fair representation claim against the Union, alleging that the Union breached its duty of fair representation in its handling of her termination and the subsequent grievance process. *See* Third Am. Compl. ¶¶ 61–79. Hybrid claims of this sort "combine two causes of action," one against the plaintiff's employer and one against her union: "the suit against the employer alleges breach of the collective bargaining agreement and arises

under Section 301 of the LMRA, while the 'suit against the union is for the breach of the union's duty of fair representation,' a duty implied under the NLRA." *Johnson v. Nat'l Football League Players' Ass'n*, No. 17-CV-5131 (RJS), 2018 WL 8188558, at *7 (S.D.N.Y. Oct. 3, 2018), *aff'd* 820 F. App'x 51 (2d Cir. 2020) (quoting *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 682 F. App'x 42, 44 (2d Cir. 2017)). A plaintiff can bring such a claim against her union, her employer, or both. *See Johnson*, 820 F. App'x at 55. But regardless of which party or parties she sues, the plaintiff is required to show both "(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-à-vis the union members." *Id.* (citation omitted). Accordingly, a hybrid claim "will fail if the plaintiff cannot show that the union breached its duty." *Fleischer v. Barnard Coll.*, No. 20-CV-4213, 2021 WL 5365581, at *1 (2d Cir. Nov. 18, 2021).

"A union has a duty to fairly represent all members subject to its [collective bargaining agreement] with an employer." *Id.* at *2. To prove that a union breached this duty, "a plaintiff must plead that (1) the union's conduct was 'arbitrary, discriminatory, or in bad faith,' and (2) there was 'a causal connection' between the union's wrongful conduct and the member's injuries." *Borici v. ABM Indus. Grps., LLC*, No. 21-CV-1826 (JPC), 2021 WL 5827640, at *3 (S.D.N.Y. Dec. 7, 2021) (quoting *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001)). A union's conduct is discriminatory when "'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)). "A union acts in bad faith when it acts with an improper intent, purpose, or motive," *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998); a claim that a union acted in bad faith "requires a showing of

fraudulent, deceitful, or dishonest action." *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999). Finally, a union's actions are arbitrary when, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citation and quotation marks omitted). "A court's examination of a union's representation 'must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Alen v. U.S. Airways, Inc.*, 526 F. App'x 89, 91 (2d Cir. 2013) (quoting *O'Neill*, 499 U.S. at 78). Thus, "[n]either conclusory allegations nor 'mere negligence' by the union in its enforcement of a collective bargaining agreement is sufficient to state a claim." *Naughton v. Loc. 804 Union*, No. 18-CV-2830 (MKB), 2019 WL 1003054, at *8 (E.D.N.Y. Mar. 1, 2019) (quoting *Mancus v. Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002)); *see also Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989) ("Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.").

Plaintiff alleges that the Union breached its duty of fair representation toward her in a number of ways. First, she claims that the Union "knowingly allowed the time to [appeal her grievance] to lapse" prior to March 1, 2021, and deliberately misled her when, through Edmund, it told her in November 2020 and January 2021 that it had already filed appeals on her behalf. Third Am. Compl. ¶¶ 35, 66–69. In plaintiff's account, "[t]hese two misrepresentations . . . were calculated to conceal [her] claims against the [U]nion." *Id.* ¶ 68. The issue for plaintiff is that she "does not allege any facts showing that [this conduct] harmed her arbitration case." *Fleischer*, 2021 WL 5365581, at *2. While the delayed appeals process and Edmund's alleged misrepresentations may have been frustrating, the Union ultimately completed its full review of

9

plaintiff's grievance and the complaint "does not allege that the delay had any effect on the outcome of the . . . proceeding." *Fleischer v. Barnard Coll.*, No. 19-CV-10738 (RA), 2020 WL 7360251, at *5 (S.D.N.Y. Dec. 15, 2020) (rejecting a plaintiff's claim under similar circumstances), *aff'd* 2021 WL 5365581; *see also Roy*, 682 F. App'x at 47 (affirming the district court's judgment in favor of a Union where the plaintiff had "not pointed to any actions taken or not taken by the Union that contributed to the arbitrator's making an erroneous decision" (citation and quotation marks omitted)); *Johnson*, 820 F. App'x at 56 (affirming summary judgment in favor of a union where the union's alleged misconduct "had no impact on the arbitral outcome"); *Thomas v. Little Flower for Rehab. & Nursing*, 793 F. Supp. 2d 544, 546, 548–49 (E.D.N.Y. 2011) (denying a union's motion to dismiss where the plaintiff alleged that the union "falsely represented that her grievance was being processed" *and* the plaintiff's grievance process was apparently never completed). Because plaintiff is required to show a causal connection between the Union's actions and her injuries, her hybrid claim fails under this theory of liability.

Next, plaintiff points to Edmund's conduct during the appeals process itself, alleging that Edmund "attempted to cause [p]laintiff's failure to appear at her July 26, 2021 appeal meeting" and that Edmund, "in bad faith" and "at the behest" of Interfaith, "influenced or caused the denial" of plaintiff's appeals. Third Am. Compl. ¶¶ 70–71. The first of these claims suffers the same problem as the ones discussed above. Plaintiff eventually was notified of the July 26 meeting, and she does not plead facts suggesting that the delayed notification prejudiced her in any way. *See id.* at ¶¶ 38–40. Accordingly, any attempt Edmund made to prevent her appearance had no effect. *Cf. Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 286 (E.D.N.Y. 2015) ("Plaintiffs do not allege that the Union made no investigation into their grievance, thus the mere fact that the Union did not promptly respond to Plaintiffs' August 2013 letter is insufficient to state a claim."). As for the

allegation that Edmund caused plaintiff's appeal to be denied, plaintiff has offered no explanation

of how Edmund influenced the appeal and only a conclusory assertion that she acted in "bad faith"

and in concert with Interfaith in doing so. *See* Third Am. Compl. ¶¶ 70–71. But the plausibility

standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 "requires more than a charge

that something bad happened and a conclusory allegation that this bad thing" was the result of bad

faith or of a conspiracy. *Bejjani v. Manhattan Sheraton Corp.*, No. 12-CV-6618 (JPO), 2013 WL

3237845, at *15 (S.D.N.Y. June 27, 2013). Plaintiff's claim that the Union acted in bad faith—

and thus breached its duty of fair representation—by conspiring with Interfaith thus cannot survive

Union defendants' motion to dismiss.[6] *Id.*; *see also Sahni v. Staff Att'ys Ass'n*, No. 14-CV-9873

(NSR), 2016 WL 1241524, at *8 (S.D.N.Y. Mar. 23, 2016) (dismissing plaintiff's arbitration-

related duty of fair representation claims where the plaintiff alleged that the union and the

employer "colluded to delay arbitration" of the plaintiff's grievances but "ma[de] no effort to

allege an explanation as to" why or how they colluded); *Felton v. Loc. Union 804, Int'l

Brotherhood of Teamsters*, Nos. 17-CV-2309 & 17-CV-4803 (AMD), 2019 WL 1046952, at *4

(E.D.N.Y. Mar. 5, 2019) ("The plaintiff offers nothing more than conclusory allegations that the

Union acted arbitrarily and in bad faith; without specifying supporting facts to show a union's lack

of good faith, the complaint fails to state a valid claim." (citation and alterations omitted)).

Plaintiff also argues that the Union breached its duty of fair representation by "ignor[ing]

and fail[ing] to assist and/or represent [p]laintiff's meritorious discharge arbitration when [it] was

aware" that Interfaith's basis for firing her was pretextual and that Interfaith "sought to avoid

making employer contributions to the pension funds." Third Am. Compl. ¶ 74. It is well-

---

[6] For the same reason, plaintiff cannot base her hybrid claim on the unsupported allegation that
Local 1199 "aid[ed] and abet[ted]" Interfaith defendants' "scheme . . . to discharge [plaintiff] for
false pretextual reasons." Third Am. Compl. ¶ 72.

established that union members have no "absolute right to have [their] grievance taken to arbitration," *Vaca v. Sipes*, 386 U.S. 171, 191 (1967)—even when their grievance is meritorious, *see Cruz v. Loc. Union No. 3 of Int'l Brotherhood of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994) ("[T]he duty of fair representation is not breached where the union . . . engages in mere negligent conduct[] or fails to process a grievance due to error in evaluating the merits of the grievance."). Thus, "[a] union's failure or refusal to pursue a grievance on its own does not constitute a breach of the duty of fair representation unless that failure or refusal may be 'fairly characterized as so far outside of a wide range of reasonableness that it is wholly irrational or arbitrary.'" *Vera v. Saks*, 424 F. Supp. 2d 694, 706 (S.D.N.Y. 2006) (citation omitted) (quoting *O'Neill*, 499 U.S. at 67); *see also Thomas*, 793 F. Supp. 2d at 548 ("A union acts arbitrarily in failing to initiate or process a grievance when it 'ignores or perfunctorily presses a meritorious claim.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 16 (2d Cir. 1993))). Put another way, to state a claim that the Union breached its duty because it did not pursue her grievance, plaintiff must "plausibly allege[] that: (1) [she] had a meritorious grievance; (2) Local 1199 was aware of the grievance; and (3) Local 1199 acted arbitrarily" or in bad faith in declining to pursue her grievance. *Thomas*, 793 F. Supp. 2d at 548 (citing *Young v. U.S. Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990)).

Here, plaintiff has met the first two elements of this test. Taking her claims as true, she seems to have had a meritorious grievance against Interfaith for firing her without just cause. It is also undisputed that the Union was aware of her grievance, having filed it on her behalf. But plaintiff's claim falters at the third element. Courts in this circuit have found that unions acted arbitrarily in their handling of a grievance where, for example, they failed "to perform any investigation after notice of a grievance," *Thomas*, 793 F. Supp. 2d at 548, or never "investigated,

responded to, nor arbitrated" multiple complaints, *Moore v. Roadway Express, Inc.*, No. 07-CV-977 (DLI), 2008 WL 819049, at *5 (E.D.N.Y. Mar. 25, 2008). I am not convinced that Local 1199 acted arbitrarily in this case, where it entertained two separate appeals of and held at least three meetings to consider plaintiff's grievance, before ultimately deciding not to pursue arbitration. To be sure, there may be instances in which a union that undertakes these multiple steps nonetheless does so in an arbitrary manner. But here, plaintiff simply has not pleaded any facts to support that conclusion.[7] Though plaintiff may believe that the Union was incorrect in its ultimate assessment of her grievance, this does not mean that it subjected her to an arbitrary process. *See Barr*, 868 F.2d at 43 ("Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach."); *Torres v. Int'l Brotherhood of Teamsters*, No. 13-CV-5352 (RMB), 2015 WL 774679, at *6 (S.D.N.Y. Feb. 20, 2015) ("[E]ven assuming, *arguendo*, that the Union had misjudged the ultimate merits of Plaintiff's grievance, this would not change the Court's determination that the Union did not breach its duty of fair representation."). As for bad faith, as discussed above, plaintiff has offered only conclusory allegations to support her assertion that the Union was driven by improper motives or acting in concert with Interfaith in its handling of her case. While I understand that plaintiff is disappointed in both the process and the result of her grievance proceedings, she has not adequately alleged that the Union acted arbitrarily or in bad faith during those proceedings. I therefore conclude that the Union did not breach its duty of fair representation by declining to bring plaintiff's case to arbitration.

---

[7] In parts of the complaint, plaintiff seems to take issue with the speed of the appeals process, suggesting that the pace means that her case was processed in a "perfunctory manner." *See* Third Am. Compl. ¶¶ 35, 43, 46. But this assertion is simply a legal conclusion unsupported by specific factual allegations as to why or how the Union acted perfunctorily.

Finally, plaintiff alleges that the Union breached its duty of fair representation "when it deleted [p]laintiff's recommendations from . . . the union's electronic hiring hall system . . . on or about September 2020 and continuing to date." Third Am. Compl. ¶ 75.[8] For reasons similar to those explained above, I reject this claim. Though plaintiff has stated that the Union removed her recommendations from the hiring hall database following her termination, she has provided no non-conclusory statements suggesting that the Union acted arbitrarily or in bad faith when it did so. *Compare Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 388 (2d Cir. 2015) (holding that the plaintiff adequately stated a claim for breach of the duty of fair representation by alleging that "the Local refused to refer him for work for which he was qualified because of his transgender status and in retaliation for instituting legal proceedings against the Local"), *with Leavey v. Int'l Brotherhood of Teamsters—Theatrical Teamsters Loc. Union No. 817*, No. 13-CV-705 (NSR), 2015 WL 5802901, at *12 (S.D.N.Y. Oct. 5, 2015) (finding that the plaintiff had not supported his duty of fair representation claim where he offered only "conjecture" that the union was "not operating its referral system objectively"). To state a breach of the duty of fair representation, plaintiff must make some showing that "the Union acted in an arbitrary or discriminatory manner, or in bad faith, in its operation of the referral system" and its treatment of plaintiff specifically. *Leavey*, 2015 WL 5802901, at *12. Plaintiff has not done so here.

As plaintiff has failed to allege that the Union violated its duty of fair representation, I grant Union defendants' motion to dismiss plaintiff's first cause of action.

## II. Plaintiff Has Not Adequately Alleged a Violation of ERISA.

---

[8] Plaintiff additionally claims that the Union breached its duty by failing "to grieve [Interfaith's] failure to make pension fund contributions for [p]laintiff." Third Am. Compl. ¶ 76. However, the complaint contains no allegation that Interfaith failed to make any required pension fund contributions.

### A. The ERISA claim against Interfaith defendants

In her second cause of action, plaintiff charges Interfaith defendants with violating § 510 of ERISA, which prohibits employers from discharging participants in a welfare or pension plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140; *see* Third Am. Compl. ¶¶ 92–95. Specifically, plaintiff alleges that Interfaith fired her "based on a false pretext to avoid paying its contributions to Plaintiff and any other similarly discharged employee." Third Am. Compl. ¶ 95.[9]

"Section 510 was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Dister v. Cont'l Grp.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (citation and quotation marks omitted). Thus, "'[a]n essential element'" of a plaintiff's § 510 claim is "'to show that [her] employer was at least in part motivated by the specific intent to' interfere with [her] ERISA rights." *Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*, 703 F. Supp. 2d 230, 248 (E.D.N.Y. 2010) (quoting *Dister*, 859 F.2d at 1111). "There is no cause of action 'where the loss of pension benefits was a mere consequence of, but

---

[9] Confusingly, in the same section of the complaint, plaintiff also claims that she was fired in retaliation for "filing grievances and/or making complaints to management to improve policies and procedures affecting the safety of patients." Third Am. Compl. ¶ 93. As Interfaith defendants point out, this explanation of the cause of plaintiff's termination undermines her claim that she was fired "for the purpose of interfering with the attainment of any right to which [she was] entitled under the plan." 29 U.S.C. § 1140; *see* Mem. in Support re Mot. to Dismiss 10, ECF No. 52. Interfaith defendants overstate the law, however, when they argue that § 510 requires plaintiff to "plead and prove that the *sole* reason for her termination was to interfere with her rights under ERISA." Interfaith Mem. 10; *see, e.g., Dister v. Cont'l Grp.*, 859 F.2d 1108, 1111 (2d Cir. 1988) ("An essential element of plaintiff's proof under the statute is to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510."); *Cavelli v. N.Y.C. Dist. Council of Carpenters*, No. 10-CV-3708 (BMC), 2011 WL 9155793, at *5 (E.D.N.Y. Mar. 7, 2011) ("[Plaintiffs] do not have to plead that [defendant's] sole reason for terminating them was to interfere with their pension rights."). Regardless, I do not reach this issue because, as discussed *supra*, even the assertions in the complaint that actually sound in § 510 cannot survive the motion to dismiss.

not a motivating factor behind, a termination of employment.'" *Id.* (quoting *Dister*, 859 F.2d at 1111). Because an "employer's specific intent is 'seldom the subject of direct proof,'" the Second Circuit applies the *McDonnell Douglas* burden-shifting framework to determine the employer's motivation. *Zahler v. Empire Merchs., LLC*, No. 11-CV-3163 (JG), 2012 WL 273698, at *10 (E.D.N.Y. Jan. 31, 2012) (quoting *Dister*, 859 F.2d at 1111). Under this framework, the plaintiff has the *prima facie* burden to show that she was qualified for her position, that she was protected by ERISA, and that she "was terminated under circumstances giving rise to an inference of discrimination." *Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2018 WL 2768645, at *11 (S.D.N.Y. June 8, 2018). "Where an employee's ERISA claim is based only on a claim that the employee has been deprived of the opportunity to accrue additional benefits through more years of employment, a prima facie case requires some additional evidence suggesting that pension interference might have been a motivating factor." *Zahler*, 2012 WL 273698, at *10 (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)).

Plaintiff has not met her *prima facie* burden in this case. To show that Interfaith, in firing her, was motivated by a desire to interfere with her pension, plaintiff relies on two allegations. First, she claims that Interfaith also "wrongfully terminated" other employees who were involved in the August 9 incident and "who were vested in their pensions" in order "to obstruct their attainment of their pension benefits." Third Am. Compl. ¶ 95. But plaintiff makes this claim solely on "information and belief," offering no insight into why or how she believes that this was Interfaith's motive. *Id.*[10] "A plaintiff cannot avoid the necessity of pleading a plausible claim

---

[10] Indeed, in her response to Interfaith defendants' motion to dismiss, plaintiff admits that "[d]iscovery is necessary to determine whether these other employees were also vested in their pensions" when they were fired. Mem. in Opp. re Mem. in Support Interfaith Defs.' Mot. to Dismiss 12, ECF No. 56. This admission suggests that plaintiff's assertion that the other employees were "vested in their pensions" and were fired "to obstruct their attainment of their pension

supported by factual allegations merely by asserting statements 'upon information and belief' without explaining the basis for the belief." *Whiteside v. Hover-Davis, Inc.*, No. 19-CV-6026 (CJS), 2020 WL 979785, at *4 (W.D.N.Y. Feb. 28, 2020), *aff'd*, 955 F.3d 315 (2d Cir. 2021); *see also Cellucci v. O'Leary*, No. 19-CV-2752 (VEC), 2020 WL 977986, at *1 (S.D.N.Y. Feb. 28, 2020) ("Allegations based on 'information and belief' are accepted only if they are non-conclusory and pertain to 'facts [that] are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (alteration in original)). Because plaintiff has offered no such explanation, I cannot rely on her unsupported statement.

Plaintiff's second allegation is that "on or about 2018," while in negotiations with the Union, "[Interfaith] resisted or sought to abolish pension funds for bargaining unit members." Third Am. Compl. ¶¶ 32, 95. To plaintiff, this previous attempt to abolish pension funds shows that, when Interfaith fired her two years later, it did so "to avoid paying its contributions to [her]." *Id.* I disagree. Though courts in this circuit have found that the timing of a plaintiff's termination can support a § 510 claim, in those cases the employer fired the plaintiff shortly before her benefits vested, strongly suggesting that she was fired to prevent that eventuality. *See, e.g.*, *Quinby v. WestLB AG*, No. 04-CV-7406 (WHP), 2007 WL 1153994, at *15 (S.D.N.Y. Apr. 19, 2007) (finding that the plaintiff established an inference of discrimination where she was fired "a mere two weeks before her pension was to vest" and collecting cases). Here, plaintiff's benefits had been vested for years, and she was about ten years from being eligible for "full pension payouts."

---

benefits" is baseless. *See Bruno v. Zimmer, Inc.*, No. 15-CV-6129 (LDW), 2016 WL 4507004, at *5 (E.D.N.Y. Aug. 26, 2016) ("[D]iscovery is not a fishing expedition for Plaintiffs to obtain information to try and create claims that do not already exist. In order to properly state a claim, Plaintiffs need to have adequate information in their possession at the time they file their complaint to substantiate the claim against a motion to dismiss.").

Third Am. Compl. ¶ 97. "This interval renders the connection too tenuous to suggest that defendant terminated plaintiff in order to deny" her full payout. *Miller*, 703 F. Supp. 2d at 249 (finding that plaintiff had not established an inference of discrimination where he was fired over two years before his eligibility for early retirement and collecting cases); *see also Zahler*, 2012 WL 273698, at *10–11 (denying the defendant's motion to dismiss where the plaintiff was ten years from "a substantially handsomer pension" *and* the plaintiff alleged multiple facts indicating that the defendant retaliated against employees who did not retire "prior to full vestiture of their pensions" and that the pension fund was in "endangered status"). Moreover, two years elapsed between Interfaith's apparent attempt to abolish the pension fund and plaintiff's termination—years in which Interfaith neither fired plaintiff nor subjected her to hostile working conditions. While Interfaith may have taken a position hostile to the pension fund during the 2018 negotiations, there is no indication that this position changed how it treated plaintiff or motivated it to fire her. In short, plaintiff is unable to plausibly show that the loss of the full pension payouts she anticipated was anything more than an indirect result of her termination. "The fact that loss of pension benefits is a routine consequence of a termination does not ineluctably mean that the consequence was the reason for the termination and thus alone cannot support an ERISA cause of action." *Hasemann v. United Parcel Serv. of Am.*, No. 11-CV-554 (VLB), 2013 WL 696424, at *14 (D. Conn. Feb. 26, 2013). I therefore grant Interfaith defendants' motion to dismiss plaintiff's § 510 claim.

**B. The ERISA claim against Union defendants**

Count two of the complaint also includes an ERISA claim against Union defendants, this one brought pursuant to § 404. *See* Third Am. Compl. ¶¶ 83–86; 29 U.S.C. § 1132. Under § 404 of ERISA, the fiduciary of an employee welfare or pension plan must "discharge his duties with respect to [the] plan solely in the interest of the participants and beneficiaries." 29 U.S.C. §§

18

1002(3), 1104(a)(1). In this case, plaintiff alleges that Union defendants "breached [their] duty to safeguard and ensure attainment of all benefits by Participants of its health welfare and pension funds" by (1) "[D]enying [plaintiff's] meritorious discharge grievance and arbitration" and (2) "[C]aus[ing] Local 1199 Funds to purge or delete [p]laintiff's employment recommendations from the [hiring hall] database." Third Am. Compl. ¶¶ 84–85.

Section 404 provides that "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control" over the management of the plan or its assets, "renders investment advice [with respect to the plan] for a fee or compensation," or "has any discretionary authority or discretionary responsibility in the administration of [the] plan." 29 U.S.C. § 1002(21)(A). "In every case charging breach of ERISA fiduciary duty[,] the threshold question is [] whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 366 (2d Cir. 2014) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)); *see also Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44, 48 (2d Cir. 2020) ("The Second Circuit employs a functional approach to determine which individuals and entities are ERISA fiduciaries by focusing on the function performed, rather than on the title held." (citation and quotation marks omitted)). Thus, "a person may be an ERISA fiduciary with respect to certain matters but not others; fiduciary status exists only to the extent that the person has or exercises the described authority or responsibility over a plan." *Coulter*, 753 F.3d at 366 (citation and quotation marks omitted); *see also Massaro v. Palladino*, 19 F.4th 197, 211–12 (2d Cir. 2021) (describing that plan trustees under ERISA may wear "different hats" at different times). Put another way, a party "assum[es] fiduciary status"—and therefore subjects itself to liability under § 404—"only when administering or managing a plan, and not when conducting business that is not regulated by

ERISA." *Leber v. Citigroup 401(K) Plan Inv. Comm.*, No. 07-CV-9329 (DF), 2015 WL 6437475, at *2 (S.D.N.Y. Oct. 16, 2015).

Here, neither of the actions that form the basis of plaintiff's ERISA claim against Union defendants—defendants' decision not to pursue plaintiff's grievance and their removal of her information from the hiring hall database—falls within ERISA's definition of a fiduciary's role. Though plaintiff's complaint refers to both Gresham and Local 1199 as ERISA fiduciaries, *see* Third Am. Compl. ¶¶ 15, 76, it does not plead any facts indicating that either defendant ever exercised "discretionary authority" over, "control[led]," "render[ed] investment advice" about, or "ha[d] any discretionary authority or discretionary responsibility in" plaintiff's pension or welfare plan. 29 U.S.C. § 1002(21)(A). *Cf. Moleon v. Alston*, No. 21-CV-1398 (PAE), 2021 WL 5772439, at *7 (S.D.N.Y. Dec. 3, 2021). And even assuming Union defendants did serve as fiduciaries over a plan covered by ERISA, plaintiff has not established how their conduct regarding plaintiff's grievance process or the management of the hiring hall database has any connection to their role in administering or managing that plan. *Cf. Ulrich v. Soft Drink, Brewery Workers and Delivery Emps., Indus. Emps., Warehousemen, Helpers and Miscellaneous Workers, Greater N.Y. and Vicinity, Loc. Union No. 812*, Nos. 17-CV-4730 & 17-CV-5547 (KMK), 2019 WL 1228056, at *36 (S.D.N.Y. Mar. 15, 2019) (outlining a number of actions by a union defendant that were "not fiduciary acts").[11] Without more, plaintiff's "bare statement" that Union defendants were ERISA fiduciaries "does not, as required, plead which functions the alleged fiduciar[ies] performed at the time of the challenged action." *Moleon*, 2021 WL 5772439, at *7; *see also Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Metro. Enters.*, No. 16-CV-284 (PAE), 2016 WL 5334982,

---

[11] Indeed, the Department of Labor has specifically explained that "the terms 'employee welfare benefit plan' and 'welfare plan'" as defined in ERISA "shall not include the maintenance by . . . employee organizations . . . of a hiring hall facility." 29 C.F.R. § 2510.3-1(f).

at \*7 (S.D.N.Y. Sept. 22, 2016) ("[T]he Court need not credit allegations that merely recite the legal conclusion that [defendant] 'was a fiduciary.'"). Accordingly, I grant Union defendants' motion to dismiss plaintiff's ERISA claim against them.

### III.   I Decline to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims.

Having dismissed the two causes of action arising under federal law, I am left only with plaintiff's state law tort claims. Where, as here, a district court "has dismissed all claims over which it has original jurisdiction," the court may decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3). In deciding whether to exercise my supplemental jurisdiction, I must "balance[] the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). I am "aided by the Supreme Court's additional guidance . . . that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Cohill*, 484 U.S. at 350 n.7).

Considering the relevant factors in this case, I find that they do not support my exercise of supplemental jurisdiction over the remaining causes of action. *Cf., e.g., Alfonso v. Mougis Logistics Corp.,* No. 21-CV-5302 (LJL), 2021 WL 5771769, at \*4–5 (S.D.N.Y. Dec. 6, 2021) (finding that "the balance of factors weigh[ed] towards declining to exercise jurisdiction" over the plaintiff's state law claims once the court had dismissed his federal claims under Rule 12(b)(6)). I therefore dismiss plaintiff's state law claims for intentional infliction of emotional distress, defamation, civil conspiracy, malicious prosecution, and prima facie tort.

### CONCLUSION

For the foregoing reasons, I dismiss plaintiff's federal claims with prejudice and dismiss

plaintiff's state law claims for lack of jurisdiction.[12] The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

_____/s/_____

Allyne R. Ross
United States District Judge

Dated:          January 12, 2022
                Brooklyn, New York

---

[12] Plaintiff has not requested leave to amend her complaint, which is already the fourth complaint she has submitted in this case.